# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

|                        |   |                          |
|---|---|---|
| In re:                 | ) | Chapter 13               |
|                        | ) | Case No. 09-41656        |
| MARYANN LANDRY,        | ) |                          |
|                        | ) |                          |
|            Debtor      | ) |                          |

## MEMORANDUM OF DECISION

Before the Court is a "Motion for Relief from the Automatic Stay" and a "Motion for Relief from the Co-Debtor Stay" (collectively, the "Motions for Relief"), filed by TD Bank, N.A.[1] ("TD Bank"). TD Bank seeks leave to foreclose on its mortgage held on property constituting the residence of Maryann Landry (the "Debtor") and located at 47 Frost Road, Tyngsborough, Massachusetts (the "Property"). In response to the Motions for Relief, the Debtor filed an Opposition as well as a "Second Motion to Avoid Wholly Unsecured Mortgage . . ."[2] (the

---

[1] Formerly known as TD Banknorth, N.A. See TD Bank's Motions for Relief.

[2] On July 10, 2009, the Debtor filed her first "Motion to Avoid the Wholly Unsecured Mortgage of TD Banknorth in the Amount of $123,447." However, on October 14, 2009, that motion was withdrawn and the instant Motion to Avoid, adding an additional mortgagee, was substituted.

The Court also notes that in the instant Motion to Avoid, the Debtor (or her counsel) appears much confused as to the identity of the non-TD Bank mortgagee. In the Debtor's Schedule D and her Chapter 13 plan, the mortgagee is listed merely as "Cbna." In the course of electronically filing the instant Motion to Avoid, the mortgagee is called "Citi Financial." In the actual title of the same motion, the Debtor calls that mortgagee "Chase Bank, NA." In the body of the motion, she refers to the mortgagee sometimes as "Chase Federal Savings Bank" and on one occasion as "Citibank Federal Savings Bank." And in an exhibit attached to the motion, she provides a printout from

1

"Motion to Avoid") seeking to avoid or strip in their entirety the second and third mortgages on the Property. One issue predominates the parties' dispute: whether the value of the Property should be measured as of the date of case commencement or as of the effective date of a confirmed plan—for the purpose of determining whether the Debtor may avoid or strip off TD Bank's mortgage lien under 11 U.S.C. § 1322(b)[3].

I.  FACTS AND POSITIONS OF THE PARTIES

The Debtor filed her Chapter 13 petition with this Court on April 30, 2009. On her Schedule A—Real Property, the Debtor valued the Property at $369,486. On her Schedule D—Creditors Holding Secured Claims, the Debtor listed mortgages against the Property held by Countrywide Home Loans in the amount of $310,240.76, TD Bank in the amount of $123,447 and "Cbna" in the amount of $87,471.

---

the North Middlesex Registry of Deeds, which identifies the mortgagee as "Citibank Federal Savings Bank." The Certificate of Services reflects that the motion was served upon CitiMortgage, Inc.—a name that does not appear anywhere except in a proof of claim, purportedly related to the subject mortgage. That proof of claim makes no effort to explain how rights under a mortgage granted to an entity known as Citibank, a Federal Savings Bank (if the Registry listing is correct), were transferred to CitiMortgage, Inc. (at least they share part of the same name; little comfort indeed).

The Debtor's sloppiness aside, the failure by mortgagees to properly explain the provenance of their asserted rights contributes to confusion by other parties and a waste of judicial time and resources by the Court. Here, thankfully, the rights of the confusedly named third mortgagee are not material as that alleged mortgagee appears to have subordinated its rights (now under the name CitiBank, N.A.) to those of TD Bank and has not opposed the Motion to Avoid. Accordingly, under any time-impacted version of the value of the Property, that mortgagee's claim is wholly unsecured.

[3] All references to statutory sections are to the Bankruptcy Code unless otherwise specified. See 11 U.S.C. §§ 101 et seq.

2

On June 10, 2011, TD Bank filed the instant Motions for Relief under 11 U.S.C. § 362(d)(1) and (2), arguing that: (1) there was no equity in the Property; (2) the Debtor was not seeking an "effective" reorganization; (3) the Debtor failed to make postpetition payments to TD Bank;[4] and (4) the Debtor's Plan did not provide for payments to TD Bank either within or outside of the Plan. The Debtor timely objected to the Motions for Relief, and a hearing was scheduled.

Early in the case, the Debtor filed the first Motion to Avoid, and, in July 2011, the second (now before the Court) after TD Bank filed the Motions for Relief. The Debtor seeks to avoid what she characterizes as the "wholly unsecured" second and third mortgages, contending that the total liens against the Property listed on Schedule D ($521,158.76) when added to the Debtor's homestead exemption ($221,000) impairs her claimed exemption pursuant to 11 U.S.C. § 522(f). The Debtor maintains that this impairment entitles her to avoid the second and third mortgages under § 522(f) so as to preserve her exemption and treat them as unsecured in her plan, pursuant to § 1322(b)(2).

In July 2011, a hearing was held on the Motions for Relief. Because the prioritization between the second and third mortgages had been resolved by those mortgagees between themselves and because it was undisputed that the Debtor had failed to make postpetition payments on either mortgage, TD Bank would have been entitled to relief from the automatic stay under § 362(d)(1) unless both mortgages could be avoided under the Debtor's Chapter 13 plan. And that question was dependent on the valuation of the Property. TD Bank

---

[4] TD Bank claimed that the postpetition arrears at the time of the filing of the Motions for Relief totaled $24,784.75.

3

argued that because the Debtor's Schedule A valuation as of the date of case commencement ($369,486) was higher than the balance due on the first mortgage ($310,240), avoidance of the second was precluded by § 1322(b)(2). The Debtor responded that, after the date of case commencement, the value of the Property had fallen below the balance owed on the first mortgage. Because the Debtor maintained that the date to be used for valuing the Property should be the effective date of the Chapter 13 Plan, as opposed to the date of case commencement, she argued that the second mortgage could be avoided (colloquially, "stripped off") and the underlying debt treated as unsecured.

II.  DISCUSSION

   **A.  Avoidance Under 11 U.S.C. § 522(f)**

Without great effort, the Court can dispose of the Debtor's argument made under § 522(f), as the targets of the Debtor's avoidance efforts are real estate mortgages.

> § 522 (f) provides in relevant part:
>
> Notwithstanding any waiver of exemptions . . ., the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); or
> > (B) a nonpossessory, nonpurchase-money security interest in any—
> > > **(i)** household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

4

>   (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>   (iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f)(1).

A real estate mortgage is a consensual and not a judicial lien.  Nor does it constitute a security interest in personal property.  Clearly, § 522(f) is inapplicable.

### B. Avoidance in Chapter 13 Plans of Wholly Unsecured Home Mortgages

#### i. The Legal Background

Pursuant to § 506(a)(1):

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).  Thus, a security interest is generally allowable only to the extent of value in the underlying collateral in excess of prior encumbrances.  In Chapter 13 cases, this distinction empowers debtors to propose plans which bifurcate undersecured claims into their secured and unsecured components and treat them accordingly—unless the undersecured claim is a mortgage on the principal residence of the debtor.  Section 1322(b)(2) provides:

>   (b) Subject to subsections (a) and (c) of this section, the plan may—
>   …

5

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence … .

11 U.S.C. § 1322(b)(2). In <u>Nobleman v. American Savings Bank</u>, 508 U.S. 324, 332 (1993), the Supreme Court held that the § 1322(b)(2) limitation on the debtor's ability to bifurcate a mortgage on the debtor's principal residence overrides the inferentially contrary indication of § 506(a)(1) and (d).

Unresolved by <u>Nobleman</u>, however, was whether § 1322(b)(2) precludes the avoidance of a *wholly unsecured* mortgage on the debtor's principal residence; that is, where the absence of any remaining value in the residence over prior liens renders the mortgage with no collateral value at all. While this question has created some differences of opinion among the courts, the leading case in this Circuit is <u>In re Mann</u>, 249 B.R. 831 (1st Cir. BAP 2000). There, the Bankruptcy Appellate Panel for the First Circuit held that, where a debtor's residence holds no value whatsoever to satisfy a mortgage thereon, that mortgage can be avoided, notwithstanding the limitation set forth in § 1322(b)(2).

Accordingly, it is well settled among bankruptcy courts in the First Circuit that where there is at least a penny of value in the home to satisfy a mortgage, the secured claim may not be bifurcated. But where there is absolutely no value to support the home mortgage—frequently referred to as a "wholly unsecured claim"—the mortgage may be avoided in full in the Chapter 13 plan.

Left unresolved, however, is one of the thornier questions on valuation: what should be the date on which valuation is measured? This is the crux of the current dispute between the Debtor and TD Bank.

    ii.    The Valuation Date

While § 506(a)(1) is informative, it provides only "nebulous guidance" as to how to compute the value of an asset in the bankruptcy estate:

> '[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.'

Johnson v. GMAC, (In re Johnson), 165 B.R. 524, 527-28 (S.D. Ga. 1994) (quoting, 11 U.S.C. § 506(a)(1)).

The essence of the foregoing provision is a statutory instruction that an asset be valued with the purpose of the valuation in mind. To the question "what is the value?", the statute responds, "why do you want to know?" And here, "why" implicates "when." Therefore, in order to answer the valuation question, courts must determine value in a temporal context. And there, the courts are divided: is the relevant date the date of case commencement or the effective date of a confirmed plan? Compare In re Edwards, 245 B.R. 917, 919 (Bankr. S.D. Ga. 2000) ("the value of the Residence is determined as of the commencement of the bankruptcy case"); In re Brager, 39 B.R. 441, 443 (Bankr. E.D. Pa. 1984) ("the value of property is fixed as of the date of the filing of the petition"); In re Mays, 85 B.R. 955, 962 (Bankr. E.D. Pa. 1988) ("for purposes of § 506(a), claims must be valued as of the date of filing"); In re Hall, 118 B.R. 671, 673 (Bankr. S.D. Ind. 1990) (a creditor's secured status is determined as of the commencement of the case); In re Johnson, 165 B.R. at 528 ("value should be determined as of the commencement of the bankruptcy case"); In re Dean, 319 B.R. 474, 477-78 (Bankr. E.D. Va. 2004) ("the petition date is the appropriate

7

date to value debtors' principal residence"); In re Young, 390 B.R. 480, 488 (Bankr. D. Maine. 2008) ("The petition date is the appropriate time for determining the value of … real property"), *with* In re Crain, 243 B.R. 75, 83 (Bankr. C.D. Ca. 1999) ("valuation should occur on or near the time of the chapter 13 confirmation hearing"); In re Ibarra, 235 B.R. 204, 213 (Bankr. D. P.R. 1999) ("The present value of the claim to be paid under the plan is to be determined as of the effective date of the plan"); In re Farmer, 257 B.R. 556, 561-62 (Bankr. D. Mont. 2000) ("valuation for confirmation purposes shall be determined as of the effective date of the plan"); In re King, 37214, 2003 WL 22110779, at *4 (Bankr. E.D. Pa. 2003) ("the date to value collateral pursuant to § 506(a) to determine the amount of a secured claim for the purpose of treatment in a Chapter 13 plan is confirmation"); and In re Nice, 355 B.R. 554, 562 (Bankr. N.D. W. Va. 2006) ("the applicable date for valuing collateral … is the effective date of the confirmed plan").

Each of the foregoing cases provides defensible reasons for its position. But with the § 506(a)(1) question as a signpost, this Court favors the arguments made by those courts which have valued collateral, for § 1322(b)(2) purposes, as of the effective date of the Chapter 13 Plan, for three distinct reasons.

First, this Court cannot ignore the fact that under the Bankruptcy Code, context almost always informs the question of valuation. For example, when a secured creditor presents a motion for relief from the automatic stay under § 362(d)(1) in order to foreclose on its collateral, the Court is obliged to consider whether that creditor's allowed secured claim will be adequately protected from

any ongoing reduction in the amount of its allowed secured claim should the collateral be later liquidated. There, the only fair approach is to examine the ongoing impact of the stay on the asset's liquidation value. See In re Robbins, 119 B.R. 1 (Bankr. D. Mass. 1990). Conversely, if the debtor chooses to retain an asset in its reorganization plan, the debtor should be held accountable for the asset's fair market or some variant of going concern or replacement value. See Associates Commercial Corp. v. Rash, 520 U.S. 953 (1997); Winthrop Old Farm Nurseries, Inc. v. New Bedford Institution for Savings (In re Winthrop Old Farm Nurseries, Inc.), 50 F.3d 72, (1st Cir. 1995)  The bottom line is that valuation is context-specific; and that is exactly the lesson that § 506(a)(1) and the Rash and Winthrop Farm cases teach.

Here, the issue that is presented to the Court is how to value the Property for the purpose of plan confirmation. Therefore, while TD Bank's Motions for Relief pose the question as one of adequate protection, the real question is whether TD Bank has any secured claim at all. And, inasmuch as that issue will be presented in the context of a Chapter 13 plan where the Debtor seeks to retain her residence, implicating § 1322(b)(2), it seems to this Court counter-intuitive to, on the one hand, ensure that a fair market valuation is used, but on the other, make that determination as of a time so long ago that it may be (and here likely is) obsolete.

Second, the language of 11 U.S.C. § 1325 evidences a congressional intention that valuations relative to plan confirmation be conducted in the context of the present, rather than the past. Section 1325(a) sets forth the requirements

9

for confirmation of a Chapter 13 plan and, with respect to the required treatment of "allowed secured claims," provides as to the available options:

> (5) with respect to each allowed secured claim provided for by the plan—
> 　　(A) the holder of such claim has accepted the plan;
>
> 　　(B) (i) the plan provides that—
> 　　　　(I) the holder of such claim retain the lien securing such claim until the earlier of—
> 　　　　　　(aa) the payment of the underlying debt determined under nonbankruptcy law; or
> 　　　　　　(bb) discharge under section 1328; and
> 　　　　(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> 　　*(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;* and
> 　　(iii) if—
> 　　　　(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> 　　　　(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> 　　(C) the debtor surrenders the property securing such claim to such holder . . .

11 U.S.C. § 1325(a)(5) (emphasis supplied).

Accordingly, where a debtor has not obtained the consent of the secured party or surrendered the encumbered property, confirmation may be obtained over the secured creditor's objection only by ensuring a proper valuation of the

10

allowed secured claim—and that valuation, the Bankruptcy Code instructs, is to be measured "as of the effective date of the plan." Id. Notwithstanding that bifurcation of the allowed secured claim may be prohibited when the § 1322(b)(2) restrictions are applicable, creating a certain circularity to the argument, it is certainly instructive that Bankruptcy Code directs that secured claims which *can* be bifurcated be treated in accordance with the value of the collateral as of the effective date of the plan and not an earlier time.

And third, consistency in statutory interpretation would suggest that valuation determinations under Chapter 13 should be no different than analogous determinations under Chapter 11. In a recent decision in this District, In re SW Hotel Venture, LLC, 2011 WL 4704215 (Bankr. D. Mass. 2011), Judge Feeney had occasion to reach the question of whether and how valuation should be impacted by its temporal context. There, the court rejected an approach which would have rigidly fixed valuation to the date of case commencement and adopted a flexible context-specific approach, concluding:

> This Court adopts the view espoused by the majority of courts, in particular the decisions of the courts in T–H New Orleans and Urban Communicators, which have adopted the flexible approach as to the timing of the determination of secured status. . . . The flexible approach has the advantage of fairness, in that it does not favor debtors over secured creditors or vice-versa. Moreover, the flexible approach is faithful to the statute's language and history that determinations of value are to be performed in light of their purpose and the disposition of collateral.

Id. at *24.

This Court agrees with the well-reasoned conclusion of the SW Hotel case and finds the determination there informative to the resolution of the question now before this Court. Here, the purpose of the valuation of the Property is to

11

determine how it should be treated under the Debtor's Chapter 13 Plan by which she intends to retain her home. Accordingly, the only relevant valuation is the current one.[5]

Finally, the Court finds it worthwhile to briefly discuss the consequences of the foregoing determination. First, a context-variable valuation is (as was pointed out in the SW Hotel case) neither debtor nor creditor-friendly. Id. While in this case, if the Debtor's valuation prevails, she may receive a windfall created by the postpetition decline in the value of the Property, that outcome is the result of a general decline in the value of real estate during the period between the date of case commencement and the effective date of the Plan. Were TD Bank's mortgage wholly unsecured on the date of case commencement and had the market risen over the same period, TD Bank would have been the beneficiary of a windfall in reverse. Second, the occasion for a dramatic market-driven decline (or appreciation, for that matter) in the value of any asset during the period between case commencement and plan confirmation is less likely in the typical Chapter 13 case, where the debtor is expected to file his or her Chapter 13 plan promptly. A secured party who believes that a debtor is "dragging his or her feet" in getting to confirmation in order to take advantage of a decline in market value is free to seek relief from the automatic stay under § 362(d)(1) if it can establish

---

[5] The Court here pauses to specifically reject TD Bank's argument that § 502 requires that its secured claim be valued as of the date of the filing of the petition. Section 502(a) provides that, "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed." Id. The "amount of such claim" is "determine[d] … as of the date of the filing of the petition." § 502(b). Section 502(b) is accordingly inapplicable. The issue before the Court is not the *amount* of TD Bank's claim, but the relation of that claim claim to the underlying collateral value for the purpose of applying § 1322(b)(2). To the latter question, § 502(b) provides no answer.

12

that the value of its collateral is declining and its allowed secured claim is therefore in need of protection.[6]

IV.    CONCLUSION

For the foregoing reasons:

1. The Debtor is ordered to file, on or before December 23, 2011, an amended Chapter 13 plan (the "Amended Plan") and amended Schedules I and J, which Amended Plan treats all mortgages on the Property, but for the first mortgage, as wholly unsecured.

2. The Court will set an evidentiary hearing on the Amended Plan to a date consistent with the evidentiary hearing on the Motions for Relief with the primary contested issue in both being the current fair market value of the Property.  If that valuation provides any collateral value for the TD Bank mortgage, the Motions for Relief will be allowed, pursuant to § 362(d)(1), on account of the Debtor's failure to make payments on the mortgage—thereby depriving TD Bank of adequate protection thereon–-and, absent a successful countervailing argument, the Chapter 13 case will be converted to Chapter 7 or dismissed at the Debtor's option.  Conversely, if that valuation proves the TD Bank mortgage wholly unsecured, the Motions for Relief will be denied and the Amended Plan will be confirmed, subject to any timely filed objections raised by the Chapter 13 trustee or any other party in interest (including TD Bank, except as to any argument under §1322(b)(2) relative to the value of the Property).

3. The Motion to Avoid will be DENIED, but without prejudice to the allegations made under § 1322(b)(2).

---

[6] Indeed, in this case the intervening period was lengthy.  The case was filed on April 30, 2009 and, notwithstanding the Debtor's failure to move forward, TD Bank did not file the instant Motions for Relief until more than 2 years later.  A substantial portion of that time was consumed in a dispute and ultimately litigation in another court between TD Bank and some variation of CitiBank to establish the priority of their respective secured claims.  That matter was not settled until April of 2011, and shortly thereafter, TD Bank, having succeeded in establishing its second mortgage position, pressed for a resolution with the Debtor.  Ironically, depending upon the values ultimately proved, the delay caused by the dispute between the mortgagees may result in neither mortgagee receiving any payment. This may be yet another example of a truism that is well understood by those who practice regularly in this court: recovery does not always follow naturally from victory when litigating over an asset whose value is declining.

13

Separate orders will be issued in conformity with this Memorandum of Decision.

DATED: December 14, 2011			By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge